# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>MATTHEW LAGOE,<br><br><br>Defendant. | )<br>)<br>)   Case No.  5:17-MJ-372 (TWD)<br>)<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of March 11, 2017 in the county of Onondaga in the Northern District of New York the defendant violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 952, 960(a)(1) & (b)(3) | Importation of a Controlled Substance |
| 21 U.S.C. § 841(a)(1), (b)(1)(C) & 846 | Attempted Distribution of a Controlled Substance |

This criminal complaint is based on these facts:
See attached affidavit

☒  Continued on the attached sheet.

_____
Complainant's signature

Michael J. Ball, Special Agent HSI
_____
Printed name and title

Sworn to before me and signed in my presence.

Date: Aug 24, 2017

_____
Judge's signature

Hon. Thérèse Wiley Dancks, U.S. Magistrate Judge
_____
Printed name and title

City and State: Syracuse, NY

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

STATE OF NEW YORK     )
COUNTY OF ONONADAGA   )
CITY OF SYRACUSE      )

I, Michael J. Ball, being duly sworn, deposes and states as follows:

1. I have been employed as a Special Agent with Homeland Security Investigations ("HSI"), within the United States Department of Homeland Security ("DHS"), formerly the United States Customs Service, since April 2002. As a Special Agent, I am a federal law enforcement officer within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21, United States Code, Sections 952, 960(a)(1) & (b)(3), and Title 21, United States Code, Section 841(a)(1), (b)(1)(C) and 846. As part of my employment with HSI, I successfully completed the Federal Law Enforcement Training Center's Criminal Investigator Training Program and the Immigration and Customs Enforcement Basic School, both of which included intensive instruction with regard to Customs laws, financial crimes and drug enforcement, including the application for, and execution of, search and arrest warrants, as well as the application for criminal complaints, and other legal process. I am currently assigned to HSI Syracuse.

2. I have participated in investigations targeting the smuggling, trafficking, and distribution of narcotics and I have extensive training on these and related topics. I am familiar with how controlled substances are obtained, diluted, packaged, distributed, sold, and used, as well as how narcotics traffickers use other persons and/or their personal property to facilitate their

1

illegal activities. I have participated in numerous synthetic narcotics-related criminal investigations and have participated in the preparation and execution of numerous synthetic narcotics-related search warrants.

3. I have personally participated in the narcotics smuggling and distribution investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation, discussions with other agents of HSI and other law enforcement officials, interviews of witnesses, and my review of relevant records and reports. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by an HSI agent, law enforcement officer, or witness who had either direct or hearsay knowledge of that statement, to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among statements made by others and are stated in substance and in part unless otherwise indicated. Any interpretations or opinions rendered in this affidavit are based on my training and experience in the context of the facts of this investigation. Because this affidavit is submitted for the limited purpose of establishing probable cause for the offenses listed in the criminal complaint, it does not recite all evidence gathered thus far.

4. This affidavit is being submitted in support of a criminal complaint for Matthew LAGOE, charging violations of Title 21, United States Code, Sections 952, 960(a)(1) and (b)(3) (importation of a controlled substance, specifically MDMA, a Schedule I controlled substance), and Title 21, United States Code, Section 841(a)(1), (b)(1)(C) and 846 (attempted distribution of a controlled substances).

5. On March 11, 2017, Customs and Border Protection (CBP) located at the John F. Kennedy (JFK) international mail branch conducted a canine examination of international mail coming from Germany to the United States. During this examination,

CBP Canine Ranchez positively alerted to the presence of narcotics in a parcel that was mailed from Germany to Matthew LAGOE, 5640 E. Taft Road, #3264, Syracuse, New York. Subsequent to the positive canine alert, CBP utilized its Border Search Authority to open the package and examine its contents. The package was found to contain 990 blue/yellow rectangular shaped tablets stamped "IKEA" secreted in a foil pouch inside a metal tin (the net weight of the tablets was 506 grams). The tablets field tested positive for the presence of amphetamine and MDMA/Ecstasy. The package and its contents were seized by CBP and subsequently turned over to HSI Syracuse for further investigation.

6. On March 21, 2017, at approximately 0900 hours, Special Agents (SA) and Task Force Officers (TFO) from HSI and the United States Postal Inspection Service (USPIS) set up physical surveillance at the United States Post Office located at 5640 E. Taft Road, Syracuse, New York. Law enforcement was in possession of the original mail parcel that had been sent to LAGOE, which now contained approximately 500 grams of "sham" in place of actual narcotics.

7. At approximately 0915 hours, the United States Postal Service (USPS) online tracking system showed the parcel as available for pickup at the Taft Road Post Office. Records indicated the status of the parcel was checked numerous times by an individual Internet Provider (IP) address since the parcel was mailed.

8. At approximately 1147 hours, LAGOE arrived at the Post Office in a blue 2007 Chevrolet Impala bearing New York Registration EJD 2875. LAGOE then entered the Post Office, retrieved a USPS delivery slip from Post Office Box #3264, and brought the slip to the Post Office counter. LAGOE handed the delivery slip to the Postal Worker and subsequently received his mail parcel. LAGOE signed for the parcel,

departed the Post Office, and got in his vehicle. Once LAGOE started his vehicle, agents and officers moved in and secured LAGOE, his vehicle and the package.

9. Your affiant and TFO Edgar Lorenzo then transported LAGOE to the New York State Police (NYSP) Barracks located approximately five (5) minutes away at 101 North Constellation Way, North Syracuse, New York, for an interview.

10. During the drive to the NYSP Barracks, LAGOE advised he worked for Fradon Lock Company located at 467 Burnet Avenue, Syracuse, New York. LAGOE stated he was on his lunch break and would be fired if he did not get back to work within the hour. LAGOE also stated that he was supposed to travel to Houston, Texas, later in the week for a work conference and would be fired if he was unable to attend the conference. LAGOE advised he thought that he was going to be in jail and unable to get back to work or attend the conference. Your affiant gave LAGOE the option to contact his employer and advise he was indisposed and unable to return to work at the scheduled time, which he declined.

11. After arriving at the NYSP Barracks, LAGOE advised that he did not wish to speak to law enforcement. Your affiant advised LAGOE that was LAGOE's right, but indicated to LAGOE that he had an option to cooperate with law enforcement. At this time, LAGOE was advised of his Miranda warnings and indicated he still did not want to speak with law enforcement absent a written contract outlining the benefits of his cooperation. Your affiant advised LAGOE that a written cooperation agreement at this stage was not an option.

12. Your affiant subsequently asked LAGOE what, if anything, would be found at his residence if law enforcement was to search it. At this time, LAGOE expressed concern that his girlfriend, who lived with LAGOE at the residence, would be taken into custody

4

if law enforcement were to search the residence. LAGOE stated that his girlfriend, Chelsea GALEK, had no knowledge of LAGOE's illegal activity. At this time, LAGOE was given an opportunity to consent to a search of his residence and his vehicle. LAGOE agreed and was presented with a US Immigration and Customs Enforcement (ICE) written Miranda rights waiver, which LAGOE read and signed. Your affiant subsequently presented LAGOE with two ICE Consent to Search forms (ICE Form 73-005), one for LAGOE's residence located at 6181 Rock Cut Road, Suite 2, Jamesville, New York, and the other for LAGOE's 2007 Impala. LAGOE read and signed both forms.

13. Once both Consent to Search forms were signed, your affiant advised law enforcement to secure LAGOE's residence (by not allowing anyone to enter the residence) until your affiant arrived with the keys to search the residence.

14. You affiant asked LAGOE where any contraband may be located in either LAGOE's residence or vehicle. LAGOE advised there was a personal use amount of Ketamine in the center console of his vehicle. LAGOE also advised the following narcotics would be found in the following locations in his residence:

   -2 THC Cartridges on the kitchen table

   -1 gram of Cocaine on the kitchen table

   -1 THC Cartridge on the bedroom dresser

   -1/4 gram of Ketamine on the entertainment center

   -1 Scale on the entertainment center

   -Personal use marijuana

15. You affiant then departed the NYSP Barracks and returned to the Post Office, where the Impala was located. A search of the Impala resulted in the New York State seizure

of a small vial of suspected Ketamine, seized by NYSP Investigator Michael Buck.

16. At approximately 1410 hours, HSI Syracuse executed a consent search of the residence, which resulted in the seizure of the following:

-7 tablets of suspected Ecstasy/MDMA, stamped with "IKEA" marking

-1 scale

-1 Acer Chromebook

-1 Lenovo Laptop

-1 Gorilla Thumb Drive

-1 Imatic Thumb Drive

17. At approximately 1500 hours, the search concluded and the residence was secured.

18. In March 2017, 990 tablets found inside the seized package and seven (7) tablets found inside LAGOE's residence were sent to the CBP Lab in Chicago. In a lab report dated August 12, 2017, all tablets were determined to be MDMA, a Schedule I controlled substance.

**WHEREFORE,** there is probable cause to believe that Matthew LAGOE has violated Title 21, United States Code, Sections 952, 960(a)(1) & (b)(3) (importation of a controlled substances, specifically MDMA, a Schedule I controlled substance), and Title 21, United States Code, Section 841(a)(1), (b)(1)(C) and 846 (attempted distribution of a controlled substance).

MICHAEL J. BALL
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 24th day of August, 2017

Honorable Thérèse Wiley Dancks
United States Magistrate Judge

7